IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TOLL BROS., INC., a
Pennsylvania corporation,

    Plaintiff,

v.                    Civil Action: 3:07-CV-92
                     (Chief Judge Bailey)

JAMES G. GORE, JR. and
JENNIFER J. GRAFTON-GORE,

    Defendants.

## **MEMORANDUM, OPINION, AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SANCTIONS**

On November 6, 2008 came the above named Plaintiff, by Charles F. Printz, Jr., by telephone and the above named Defendants, by James G. Gore, Jr., *pro se*, by telephone for a hearing on Plaintiff Toll Bros.' Renewed Motion for Sanctions. Testimony was not taken, and no other evidence was introduced.

## I. INTRODUCTION

A. Background

On May 4, 2005, the Defendants, the Gores, contracted with Hickory Ridge, LLC, to acquire 53.7 acres of real estate in Berkeley County, West Virginia. On July 21, 2005, the Gores assigned their interest in the contract to Toll Brothers, for $9,730,000. Toll Brothers paid two deposits to the Gores totaling $1,000,000. Mrs. Grafton-Gore executed a guaranty agreement secured by a deed of trust on property she owned.[1]

---

[1] Since the exhibits are not scanned with the complaint, this is the Court's best guess. The clerk says there are no exhibits attached to the original complaint.

In March 2006, the Gores filed suit in the Circuit Court of Berkeley County against Hickory Ridge for specific performance on the sales contract. Hickory Ridge conveyed the real property to the Gores. On July 20, 2007, Toll Brothers filed this action against the Gores seeking return of its $1,000,000 deposit. The Gores responded with their Answer and Counterclaim, alleging breach of contract, interference with contract, slander of title, and fraud.

The parties engaged in discovery and a dispute arose.

B. The Motion

Plaintiff's Renewed Motion for Sanctions[2]

C. Decision

Plaintiff's Renewed Motion for Sanctions is **GRANTED** as hereinafter set forth.

## II. FACTS

1. On April 22, 2008, Plaintiff served its First Set of Interrogatories upon the Defendants. Interrogatory #2 stated as follows: Describe in detail what Defendants did with the $1 million deposit ("the money") paid by Toll Bros. pursuant to the Assignment Agreement. Please include in your answer the following:

    a. The date the money was deposited;

    b. The bank accounts where the money was deposited, by bank name, location, and type of bank account;

    c. A detailed description and accounting of all disbursements, payments, and transfers made by Defendants of the money from the date of deposit to the present time, identifying all payees and recipients;

    d. The current whereabouts of the money remaining, including the bank name, location and type of bank account; and

---

[2] Doc. No. 84

  e. A detailed description of how the money was used on the Hickory Ridge project, if applicable.

 2. On May 20, 2008, the Defendants filed their responses to Plaintiff's First Set of Interrogatories. In response to Interrogatory No. 2, the Defendants stated as follows:

> The Gore's object to Toll Brother's Interrogatory Number 2. The Gore's disposition of the money in this matter is irrelevant to issues herein and has no bearing on the case at bar. The Gore's admit receiving the money depositing the money in Mrs. Gore's checking account and spending the money on items unrelated to the case. What happened to the money after it was spent is not discoverable in this matter and is not related to any issue in this case and will not lead to any fact that is discoverable in this matter. The money was commingled with the Gore's funds and cannot be specifically traced. The Gore's believe that this interrogatory is posed for the exclusive purpose of attempting to embarrass them or unduly burden them in some inappropriate form.

 3. On June 12, 2008, Plaintiff's counsel wrote Defendant Gore an email requesting a complete response to Interrogatory No. 2.

 4. On June 13, 2008, Defendant Jamie Gore responded to Plaintiff's counsel by email refusing to provide a complete answer to Plaintiff's Interrogatory No. 2 except to state that there are no funds left from the Plaintiff's $1 million deposit and that the funds were not spent on the Hickory Ridge property.

 5. On June 13, 2008, Plaintiff's counsel replied to Defendants' email stating that he cannot accept the Defendants' proffers in their June 13, 2008 email without a complete answer to Interrogatory No. 2.

 6. On June 13, 2008, Plaintiff's counsel contacted Gore by telephone to confirm that the parties are unable to resolve their dispute over Interrogatory No. 2.

7. On June 20, 2008, Plaintiff, Toll Bros., filed a Motion to Compel[3] and an Evidentiary Hearing and Argument was held on July 16, 2008.

8. The Court found that the disposition of the $1 million, if any, prior to September 2006, was reasonably calculated to lead to the discovery of admissible evidence. On August 7, 2008, the Court ordered Defendants to respond to Plaintiff's Interrogatory No. 2(c) only, and specifically required Defendants to provide the type of accounting requested in Plaintiff's Interrogatory No. 2(c), but only from the date of deposit through September 2006.[4]

9. Defendants responded to the order by producing the following documents: photocopies of 42 checks drawn on an account at Marshall National Bank, many of which were partially illegible, one of which was intentionally redacted without explanation, and the sum of which revealed that certain checks from the sequence were missing; and several cashiers checks made out to Defendant Grafton-Gore, from funds in the account, totaling $512,433.48.

10. No accounting or explanation of any kind was provided by the Defendants.

11. On August 29, 2008, Plaintiff's counsel drafted an email to Defendant Gore explaining that Defendants' Supplemental Response to Discovery did not comply with the Court's Order of August 7, 2008.

12. On August 29, 2008, Defendants responded that they believed that they had complied with the Court's Order.

13. On September 6, 2008, Plaintiff filed a Motion for Sanctions[5] based upon

---

[3] Doc. No. 39

[4] Doc. No. 51

[5] Doc. No. 56

Defendants' repeated failures to comply with discovery requests. An Evidentiary Hearing and Argument was held on October 1, 2008.

14. On October 1, 2008, the Court found that Defendants had failed to comply with the Court's Order[6] entered August 7, 2008 and Ordered Defendants to answer Interrogatory No. 2(c) within ten days.[7]

15. Specifically, the Court directed Defendants to provide:

a) the names and addresses of all banks or other entities where the $1,000,000.00 was deposited and the corresponding account number of every checking or other account in all banks or other entities where the $1,000,000.00 was deposited.

For all transfers from said accounts:

b) the check number or other identifying number if the transfer was not by check;

c) the date;

d) the payee;

e) the specific purpose of the payment in detail;

f) the specific purpose of the payment in detail;

g) in the event any check was made payable to either of the defendants, defendants shall state where any such sums were deposited, and if spent prior to September, 2006, the information in a) through f) above.

16. On October 14, 2008, Defendants responded to the Court's Order of October 1, 2008. Defendants' Request for an Advisory Opinion was denied by the Court on October 15,

---

[6] Doc. No. 51

[7] Doc. No. 64

2008.[8]

17. On October 15, 2008, Plaintiff filed its Renewed Motion for Sanctions.[9]

18. On November 3, 2008, Chief Judge Bailey granted summary judgment in favor of Plaintiff, Toll Bros., Inc.[10]

19. An Evidentiary Hearing and Argument was held on November 6, 2008 to resolve Plaintiff's Renewed Motion for Sanctions.

20. The clerk entered judgment in favor of Toll Bros., Inc. against Defendants, James G. Gore, Jr. And Jennifer J. Grafton-Gore. Therefore, Plaintiff's Renewed Motion for Sanctions is the only outstanding motion remaining in this case.

### III. PLAINTIFF'S RENEWED MOTION FOR SANCTIONS

A. <u>Contentions of the Parties</u>

Plaintiff contends that a good faith effort has continually been made to resolve the discovery dispute without court action and that Defendants should be required to pay reasonable attorney fees from the point in time in which Plaintiff filed its first Motion for Sanctions and should run against both Defendants. Specifically, Plaintiff argues that Defendants' accounting, submitted in response to the October 1, 2008 Court Order suggests deception on the part of the Defendants. Plaintiff points to the fact that Defendants initially responded to the August 7, 2008 Order by producing photocopies of checks indicating the money may have been held in an account bearing the number 188816, and in the name of Jennifer Grafton-Gore. Plaintiff

---

[8] Doc. Nos. 82, 83

[9] Doc. No. 84

[10] Doc. No. 99

6

maintains it was this action that prompted its first Motion for Sanctions. In response to the Court's October 1, 2008 Order, Defendants indicated an additional account bearing the number 709174. Plaintiff argues this was the first time this account number had been disclosed and suggests deception by Defendants and put in serious question the integrity and credibility of the information that had provided as to what Defendants did with the $1,000,000 deposit.

Plaintiff next argues that Defendants' explanation of the conflict and the different account numbers appears evasive and not believable. Lastly, Plaintiff argues that the information provided consisted of mostly posted checks and without existing balances, the information was not useful.

Defendants responded to Plaintiff's arguments in reverse order. First, Defendants maintain that they did not furnish checks that had been written and not posted, but there is no evidence that checks that had been written and not posted even exist. Defendants argue that the Court did not require them to supply checks that had been written and not posted. Furthermore, Defendants argue that they have complied with all Orders of the Court in this case. Defendants argue that the reason the answers to the two Court Orders do not match is because the Orders requested different information. Defendants also contend that the response to the first Court Order was rendered *res adjudicata* by the Court's second Order. Lastly, Defendants argue that Plaintiff failed to comply with Rule 37 because there was no good-faith conference and no certificate was filed.

B.   The Standards

   1.   Discovery - Duty to Respond Fully and Completely - No Gamesmanship: Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and

completely why they cannot respond. Gamesmanship to evade answering as required is not allowed. Hansel v. Shell Oil Corporation, 169 F.R.D. 303 (E.D. Pa. 1996).

  2. <u>Sanctions - Fourth Circuit Four Part Test:</u> Four factors must be considered in determining what sanctions to impose: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003)(quoting <u>Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians</u>, 155 F.3d 500, 504 (4th Cir. 1998)).

  3. <u>Sanctions - When Not Appropriate:</u> Sanctions are not appropriate "When it has been established that failure to comply has been due to inability, and not wilfulness, bad faith, or any fault of the non-complying party." <u>Wilson v. Volkswagon of Am.</u>, 561 F.2d 494, 503 (4th Cir. 1997).

C. <u>Discussion</u>

  Failure to comply with a discovery order can result in the immediate imposition of sanctions. Rule 37(b)(2)(A) states, in part, "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 37(a), the court where the action is pending may issue further such orders." Rule 37(b)(2)(C) allows this Court to issue an order that "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

  A trial court has broad discretion in applying sanctions under Rule 37. <u>National Hockey</u>

League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976). The sanctions enumerated in Rule 37 are flexible and "may be applied in many or varied forms as the court desires by exercising broad discretion in light of the facts of each case." Guidry v. Continental Oil Co., 640 F.2d 523, 533 (5th Cir. 1981). In addition, the court has the inherent authority to sanction a litigant for the destruction of relevant and potentially discoverable documents. Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 556 (N.D. Cal. 1987); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)(discussing a court's inherent power to impose sanctions on attorneys who fail to comply with discovery orders); In re Prudential Ins. Co. of Am. Sales Practices Litig., 169 F.R.D. 598, 614 (D.N.J. 1997)(stating that the court possesses the inherent authority to punish those who abuse the judicial process), rev'd on other grounds, 133 F.3d 225 (3d Cir. 1998). "The district court may use as many and as varied sanctions as are necessary to hold the scales of justice even." 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2284 at 612-13 (1994).

Four factors must be considered in determining what sanctions to impose: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)(quoting Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)).

Plaintiff has met the standard for imposing sanctions. First of all, Plaintiff has demonstrated that the Defendants have failed to comply with the Court's order of August 7, 2008

9

compelling them to respond to discovery, in violation of Fed. R. Civ. P. 37(b)(2).[11]  Additionally, Plaintiff has also shown that Defendants failed to comply with the Court's order of October 1, 2008 requiring Defendants to answer Interrogatory No. 2(c) following Plaintiff's first Motion for Sanctions.[12]  The Court believes the Defendants were engaging in gamesmanship in order to avoid disclosing what was done with the $1,000,000 deposit.  Such gamesmanship is not allowed.  Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond.  Hansel v. Shell Oil Corporation, 169 F.R.D. 303 (E.D. Pa. 1996).

Plaintiff has met its burden under the four part test for sanctions by demonstrating that 1) these Defendants acted in bad faith, 2) this non-compliance caused Plaintiff prejudice, 3) there is a need for deterrence of this type of non-compliance, and 4) less drastic sanctions may not be effective.  Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)(quoting Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)).

Plaintiff has demonstrated that these Defendants have acted in bad faith.  Defendants initially objected to Interrogatory 2(c) on the ground that it was irrelevant.  Upon being questioned by Plaintiff's counsel regarding the whereabouts of the $1,000,000 deposit, Defendant Gore's email response was "I do not believe that the request relates to admissible evidence."  Defendant Gore called into question Plaintiff's counsel's motive for making the request, calling it "harassment."  Defendant Gore went on to question whether the funds could

---

[11] Doc. No. 51

[12] Doc. No. 64

10

even be traced once they had been commingled, explained that there was no money left and that none of the funds were spent on the Hickory Ridge Property. It was this evasiveness that led to Plaintiff's Motion to Compel.[13] Defendants were ordered to respond to Plaintiff's Interrogatory No. 2(c), which included a "detailed description and accounting of all disbursements, payments, and transfers made by Defendants of the money."[14] Defendants responded by supplying Plaintiff with photocopies of checks, a construction contract and a settlement statement from a real estate sale. It should be noted that the checks included in Defendants' response were drawn on a bank account numbered 188816. Defendants' willful disregard of the Court's order to give a detailed accounting resulted in Plaintiff's Motion for Sanctions. Defendants were again ordered to give a detailed description of the whereabouts of the $1,000,000.[15] Defendants' responded with a more thorough accounting, but with an additional bank account that had not previously been disclosed. The Court finds that Defendants acted in bad faith. Interrogatory No. 2(c), as well as the two Court Orders were unambiguous. Defendants had three opportunities to properly respond. Instead, they chose to engage in gamesmanship, ignoring Court orders and not being forthcoming with the accounts where the money was allegedly deposited and spent.

Plaintiff is also able to meet the second factor of the test, because it has demonstrated that the failure to comply with discovery has caused Toll Bros. prejudice. Had Defendants been forthcoming at the outset, and responded to Plaintiff's simple and unambiguous discovery request, or had they complied with the Court Orders dated August 7, 2008 and October 1, 2008,

---

[13] Doc. No. 39

[14] Doc. No. 51

[15] Doc. No. 64

11

Plaintiff would have been spared the burden and expense of having to file a motion to compel, as well as two motions for sanctions.

Plaintiff has also demonstrated the third factor, the need for deterrence of this type of noncompliance. These defendants have shown an unwillingness to comply with basic discovery requests. This type of behavior places an undue burden on the opposing party as well as the Court.

As for the fourth factor, because summary judgment has already been granted, a monetary fine is the only appropriate sanction available in this case.

D.     Decision

Plaintiff seeks $10,194 in attorney's fees billed at $130 per hour for 13.4 hours of work, $175 per hour for 12.3 hours of work, $190 per hour for 5.4 hours of work and $265 per hour for 19.9 hours of work.

There was no proof of the prevailing rate of attorney's fees in the jurisdiction for discovery disputes. In the absence of any evidence of the prevailing rates for discovery disputes in this jurisdiction, I find the above-mentioned hourly rates to be appropriate for this kind of work in 2008.

Plaintiff's Renewed Motion for Sanctions is **GRANTED**. Defendants shall pay Plaintiff the sum of **$6,975.50** for attorneys' fees incurred from the date of the August 7, 2008 Order due to the Gores' repeated failure to make a full and complete disclosure of the discovery sought. Defendants shall pay Plaintiff the sum of **$6,975.50** within thirty (30) days of the date of this Order.

Filing of objections does not stay this Order. Any party may, within ten (10) days after

being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

DATED: November 14, 2008

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE